UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SCOTT M. CARRIERE                                    CIVIL ACTION

VERSUS                                               NO:    12-02781

SOCIAL SECURITY ADMINISTRATION                       SECTION: "E" (4)

## REPORT AND RECOMMENDATION

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 of the United States Code § 405(g).[1]  The Commissioner denied Scott M. Carriere's ("Carriere") claim for Disability Benefits and Supplemental Social Security Income Benefits under Title XVI of the Social Security Act, Title 42 United States Code § 1382(c).

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 United States Code § 636(b) for the submission of Proposed Findings and Recommendations.

## I.   Factual and Procedural Summary

Carriere filed the subject complaint seeking a review of the denial of his claim for Social Security Disability Insurance Benefits (DIB) under Title II of the Social Security Act and protectively filed a Title XVI application for supplemental security income on May 3, 2010.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 24(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence section 205(g) of the Social Security Act.  42 U.S.C. §405(g)

[2] Transcript ("Tr."), R. Doc. 14-2, p.18.

At the time of his request for social security, Carriere was a 41-year-old man with two years of college and one year of vocational training in mechanical drawing.[3]  He last worked in 2006 in the area of construction work and painting.[4]  Before working in construction, he worked at an athletic club as a front desk attendant.[5]  Carriere filed this request for social security disability contending that he is disabled due to Type II Diabetes, Depression, and incisive Hernia.[6]

On August 30, 2010, Dr. Eisenhauer found that Carriere had the following impairments: Diabetes Mellitus, Essential Hypertension, Chronic Liver Disease, Obesity, Disorders of the Muscle, Ligament and Fascia, Affective Disorders, Substantive Addition Disorders and Anxiety Disorders.[7]

On October 13, 2010, Carriere requested a hearing by the Administrative Law Judge ("ALJ").[8]  On June 22, 2011, ALJ, Benita A. Lobo, ("ALJ") conducted the hearing and Carriere testified.[9]  The alleged onset date of Carriere's disability is April 30, 2005.[10]

The ALJ found that Carriere last met the insured status requirement of the Social Security Act on December 31, 2010.[11]  The ALJ noted that Carriere alleged disability due to anxiety but concluded that the medical evidence does not support the degree of disability he alleges.[12]

---

[3] R. Doc. 14-2,  p. 2, 18.

[4] *Id.* at 35.

[5] *Id.* at 34.

[6] R. Doc. 14-4, p. 80.

[7] R. Doc. 14-3, p. 74.

[8] R. Doc. 14-4, Tr. 112,  Notice of Hearing, 04/14/11; Tr. 84, p. 6, Request for ALJ Summary.

[9] R. Doc. 14-2, Tr. 30-57, ALJ Hearing Decision, 06/22/11.

[10] R. Doc. 14-6,  Tr. 164-173, Disability Report, 05/21/10.

[11] R. Doc. 14-2, Tr. 18, ALJ Decision, 07/19/11.

[12] R. Doc. 14-2, Tr. 21.

Specifically, the ALJ noted that Carriere had a diagnosis of social phobia, which was contradicted by his prior work at the front desk of an athletic club.[13]  Carriere participated in a psychiatric evaluation on April 7, 2009, for which he was diagnosed with major depression, recurrent, severe without psychotic features.  However, the ALJ found that because Carriere had not received any form of mental health treatment for his anxiety, the level of severity he alleged was clearly diminished.[14]

As such the ALJ held that Carriere did not have an impairment or combination of impairments that meet or medically equals the listed impairments in 20 CFR Part 404, Subpart P.[15] The ALJ further held that after consideration of the entire record, Carriere had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), as he was capable of performing past work as a spa and customer service/sales attendant, as this work did not require the performance of work-related activities which were precluded by his residual functional capacity.[16]  Finally, the ALJ found that Carriere  has not been under a disability as defined in the Social Security Act from April 30, 2005 through the date of the decision.[17]

## II.    Standards of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 24.

[17] Id.

Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995); *see Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must do more than create a suspicion of the existence of the fact to be established, but a lack of "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (*citing Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted  . . . for a constructive period of not less than twelve months."  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. § 423(d)(3).

## III.   Analysis

Carriere contends that the ALJ inappropriately disregarded his treating physicians' findings and instead gave significant weight to the non-treating, non-examining state agency physician's opinion. Carriere further contends that the ALJ did not provide any good reasons or consider each of the 20 C.F.R. § 404.1527(c)(2) factors before declining to give his treating physicians' opinions controlling weight.[18]

The Commissioner contends that the ALJ properly evaluated and weighed the physicians' opinion as he discounted Dr. Glen Hebert's ("Dr. Hebert") November 11, 2010 opinion that Plaintiff could not repetitively use his fingers, stand, walk or sit for six of the eight hours in a workday.[19] The Commissioner also contends that the ALJ appropriately considered Dr. Hebert's findings, but noted that Carriere's clinical tests contradicted the disabling limitations and that his opinion is not supported by his handwritten notes or physical findings and deficits.[20]

Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of

---

[18] R. Doc. 19, p. 5-7, Plaintiff's Brief in Support of Claim for Relief, 04/29/13.

[19] R. Doc. 22, p. 3-4, Defendant's Reply Brief, 07/09/13.

[20] *Id.*

5

time, should be accorded considerable weight." *Perez v. Schweike*, 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusional and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.2000); (quoting *Martinez*, 64 F.3d at 176).

Under the regulations, a treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions. *Martinez*, 64 F.3d at 176; 20 C.F.R. § 404.1527(a)(2). The ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez*, 64 F.3d at 176; (citing 20 C.F.R. § 404.1527(d)(2)).

The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists. *Id.* " '[T]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez*, 64 F.3d at 175 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

The relevant criteria to consider provides that the ALJ consider (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the

specialization of the treating physician.  *See* 20 C.F. R § 404.1527.  Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

The record shows that Dr. Hebert treated Carriere from October 20, 2009 to May 18, 2011.[21] The records of October 20, 2009 show that Carriere sought medical treatment at Bogalusa Medical Center.  The nurse noted that he was ambulatory and performed activities of daily living independently.[22]  In January 2010, he returned and noted that he was "doing well."[23] He was shortly thereafter scheduled for lab tests.[24] On February 23, 2010, he returned for care and Dr. Hebert noted that he was reviewing his labs, he referred him to the GI department for his Hepatitis C and did not note any limitations or restrictions of movement.[25]

The records of August 3, 2010 show that Carriere sought medical treatment from Bogalusa Medical Center.  During this visit, the nurse noted that, he had no complaints and that Carriere did not have his labs but came to get his prescription refilled. His blood pressure was 130/71 and his weight 273lbs.[26]  He was scheduled to return within three months.[27]  Dr. Hebert saw him on November 11, 2010, and noted that although his diabetes was under better control, he still had Hepatitis C and an incisional Hernia.

---

[21] R. Doc. 14-7, Tr. 232-286.

[22] R. Doc. 14-7, Bogalusa Medical Center, Tr. 245, 10/20/09.

[23] R. Doc. 14-7, BP Outpatient Clinic Visit Record Physician, Tr. 240, 01/05/10.

[24] *Id.*

[25] R. Doc. 14-7, BMC Outpatient Clinic Visit Record Physician Note, Tr. 238-39, 02/23/10.

[26] R. Doc. 14-7, Bogalusa Medical Center Record, Tr. 319-320, 11/11/10.

[27] R. Doc. 14-7,  BMC Outpatient Clinic Visit Record Physician Note, Tr. 321, 08/02/10.

At this visit, Dr. Hebert also increased Carriere's insulin, but no limitations of Carriere's daily living activities were noted.[28]  Also on that date, Dr. Hebert issued a letter which indicated which symptoms/signs Carriere suffered. Dr. Hebert checked every symptom/sign "box" noting that Carriere experiences progressive weakness, including shortness of breath, progressive swelling of his feet, sitting pain in the region of the abdominal hernia, pedal edema, and that on protracted sitting, he experiences burning, tearing pain in his abdomen.[29] Dr. Hebert's letter also noted that on sustained or repetitive use of his fingers, Carriere experiences numbness, weakness, loss of dexterity and a feeling of tightness in his fingers.[30]  Finally, he noted that Carriere would likely experience significant pain or exacerbate his condition, on a daily basis, if he were to stand/walk and sit for 6 to 8 hours a workday.[31]

On February 17, 2011, Carriere returned to the clinic with complaint of back pain and also to get a flu shot.[32] At this time, he was diagnosed with Diabetic Neuropathy.[33] On March 17, 2011 he returned to the clinic for a visit and reported a history of Hepatitis C and alcohol abuse. He reported to the doctor that he resumed drinking 15 of the last 30 days. The doctor also noted that Carriere should have an abdominal ultrasound.[34]  On May 18, 2011, Dr. Hebert completed a form

---

[28] R. Doc. 14-7, BMC Outpatient Clinic Visit Record Physician Note, Tr. 319.  *See also,* Dr. Hebert's Letter Regarding Symptoms/Signs, Tr. 303-04, 11/11/10.

[29] R. Doc. 14-7,  Dr. Hebert Letter regarding Symptoms/Signs, Tr. 303-04, 11/11/10.

[30] *Id.*

[31] *Id.*

[32] R. Doc. 14-7, Outpatient Clinic Visit Record, Tr. 315, 02/17/11.

[33] R. Doc. 14-7, BMC Outpatient Clinic Visit Record, Tr. 311, 03/17/11.

[34] R. Doc. 14-7, BMC Outpatient Clinic Visit Record, Tr. 310, 03/17/11.

letter indicating that his answers as indicated during the November 11, 2010 limitations report remain the same.[35]

Carriere contends that he is unaware of any requirement that the treating physician provide a narrative explanation for every opinion. Counsel for Carriere further contends that he has had prior cases which there were similarly drafted questionnaires which served as the basis for reversal by the Fifth Circuit in *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), *Williams v. Astrue*, No. 08-30820, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) and *Wagner v. Apfel*, No. 98-30002 (5th Cir. 1998).[36]

In *Audler*, the Court noted that claimant's treating physician completed a diagnostic checklist indicating the symptoms that the plaintiff's symptoms had met the definition of nerve root compression. *Audler,* 501 F.3d at 448-49. It also contained a statement of limitations and the court noted that there was no medical evidence that was introduced to contradict the findings. *Id.* The Court also noted that absent some explanation from the ALJ to the contrary, Audler would have met her burden establishing that she met the listing level impairment. *Id.* Therefore, the district court's decision was reversed because the ALJ did not state a basis for adverse determination, or identify that the listed impairment for which the symptoms were insufficient. As a result, the court explained that it could not then evaluate the reasonableness of the decision. *Id.*

Here, the Court notes that there is record evidence of lower back pain and diabetic neuropathy which may have also caused Carriere's pain. In fact, the record indicates that on February 12, 2011, Carriere reported his pain "comes and goes" but that he had a sharp pain that

---

[35] R. Doc. 14-7, Hebert  Form Letter, Tr. 305, 05/18/11.

[36] *See* R. Doc. 19, p. 4, Plaintiff's Brief in Support of Claim for Relief, 04/29/13.

went as far down as his tail bone.[37]  The evidence also shows that a diabetes foot screen form was completed, which indicated that there was no loss of protective sensation levels in his feet.[38]  The records further show on October 20, 2009, Carriere complained of numbness in both of his hands, including his fingers; a recurring hernia, a tearing sensation and an ulcer at the site of his incision.[39]

There is, however, no evidence that Carriere had difficulty breathing contrary to Dr. Hebert's finding. It is also unclear why he would experience significant pain or exacerbate his condition where the medical records show that there was decrease in his back pain.[40] Further the Fifth Circuit in *Jones v. Heckler,* 702 F. 2d 616, 621 n. 4 (5th Cir. 1983) noted that the mere existence of pain is not an automatic ground for obtaining disability benefits. For pain to be found "disabling,"it must be constant, unremitting, and wholly unresponsive to therapeutic treatment. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.2001). Here, the medical evidence does not support Dr. Hebert's finding that Carriere's pain was disabling.  In contrast, the record indicates that his pain was subsiding.  As such, the ALJ did not err when she did not give controlling weight to Dr. Hebert's opinion regarding Carriere's pain.

Additionally, while there is evidence that Carriere complained of back pain, the record is void of any evidence that supports the finding of back pain. There is also no evidence of any supportive diagnostic test having been conducted. Because it is settled that the mere diagnosis of an impairment does not alone establish a disabling impairment, the ALJ's decision to reject Dr.

---

[37] R. Doc. 14-7, BMC Outpatient Clinic Visit Record Notes, Tr. 314, 02/12/11.

[38] R. Doc. 14-7, LSU Health Sciences Center Diabetes Foot Screen, Tr. 316, undated.

[39] R. Doc. 14-7, Physician/Provider Notes, Tr. 244, 10/20/09.

[40] R. Doc. 14-7, BMC Outpatient Clinic Visit Records, Tr. 315, 02/17/11.

Hebert's opinion regarding Carriere's functional limitation due to back pain, is supported by substantial evidence. *See e.g.*, supra, *Jones*.

Additionally, the functional limitations regarding Carriere's ability to stand/walk, the swelling in his feet, along with the reported numbness and weakness in his fingers, is not supported by substantial evidence. The records show that on several visits Carriere was ambulatory, and able to engage independently in activities of daily living.[41] Although the record does confirm that Carriere had diabetic neuropathy, there is no evidence in the record to support the finding of swelling.[42] Therefore the limitations, if any, caused by the neuropathy are not supported by the record. As such, the ALJ's decision not to give controlling weight to Dr. Hebert's opinion of Carriere's limitations is supported by substantial evidence.

Having considered the ALJ's finding, the medical records and the limitations finding of Dr. Hebert, the Court finds that the ALJ's decision not to give controlling weight to Dr. Hebert's opinion is based upon substantial evidence.  As to the hernia, the court notes that although the record does confirm the presence of a slightly tender hernia, it also indicates that it did not affect Carriere's activities of daily living, and did not show evidence of strangulation.[43] Further, while Carriere was scheduled for surgery, the surgery was cancelled due to his blood sugar being elevated. There is no evidence that the absence of the surgery resulted in additional limitations.

Carriere's diabetes, as of November 2010, was also under better control, although he was cautioned and instructed to stop drinking alcohol.[44] Finally regarding Carriere's mental status, the

---

[41] R. Doc. 14-7, BMC Outpatient Clinic Visit Records, Tr. 245, 311, 10/20/09 & 03/17/11.

[42] R. Doc. 14-7, BMC Outpatient Clinic Visit Records, Tr. 314, 02/17/11.

[43] R. Doc. 14-7, BMC Clinic Visit Records, Tr. 284 & 285.

[44] R. Doc. 14-7, BMC Clinic Visit Record, Tr. 310 & 319, 03/17/11 & 11/11/10.

ALJ considered Dr. Witt's report who evaluated him and found that neither his emotions or intelligence prevented him from securing gainful employment.[45] As a result, the Court hereby **AFFIRMS** the decision of the ALJ because it is based upon substantial evidence.

**IV.    Recommendation**

     **IT IS THEREFORE RECOMMENDED** that the Commissioner of Social Security's final decision denying Plaintiff, Scott M. Carriere ("Plaintiff") claim for Disability Benefits and Supplemental Social Security Income Benefits under Title XVI of the Social Security Act, under Title 28 U.S.C. § 1382(c), be **AFFIRMED** as its decision **IS** based on substantial evidence, pursuant to Title 42 U.S.C. § 405(g).

     A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within FOURTEEN (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[46]

     New Orleans, Louisiana, this 27th day of November, 2013.

     **KAREN WELLS ROBY**
     **UNITED STATES MAGISTRATE JUDGE**

---

[45] R. Doc. 14-7, Dr. Victoria Whitt, Phd, Tr. 293-297, 08/20/10.

[46] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.